UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NICHELLE WILLIAMS )
4116 Steeds Grant Way )
Fort Washington, MD 20744 )
)
          Plaintiff, ) Civil Action No.
)
    v. ) **Jury Trial Demanded**
)
ROBIN CARNAHAN, Administrator )
U.S. General Services Administration )
1800 F St., NW )
Washington, DC 20405 )
)
          Defendant, )
)

## FEDERAL COMPLAINT

Plaintiff, Nichelle Williams, by way of her counsel, Morris E. Fischer, hereby submits this federal complaint in violation of under Title VII, 42 U.S.C. § 2000e *et seq.* and 29 U.S.C. § 633a.

## PARTIES

1. Plaintiff, Nichelle Williams, ("Plaintiff") ("Williams") was employed as the Director of Research at the U.S. Election Assistance Commission ("EAC"), which is an organization within the General Services Administration ("GSA").

2. GSA is an independent agency of the United States government.

3. GSA has an office in Washington, DC 20001.

1

Defendant is an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1) headquartered in Washington, DC.

4. EAC is not a sub-agency of Defendant General Services Administration, but as a result of EAC being so small, the agency contracted with GSA for some of its HR functions.

5. Defendant Carnahan is Administrator, GSA named in her official capacity pursuant to 42 U.S.C. § 2000e-16.

6. Said Defendant does business and is located in the District of Columbia.

7. Said Defendant is properly named as the head of the Agency pursuant to 42 U.S.C. § 2000e-16(c).

## JURISDICTION

8. This action arises under the Title VII, 42 U.S.C. § 2000e *et seq.* and 29 U.S.C. § 633a *et seq.*, which prohibit discrimination based on race and gender.

9. Therefore, this court has jurisdiction over these claims under the aforesaid U.S.Cs.

10. Defendants reside in this judicial district, and a substantial part of the events giving rise to this action took place within this judicial jurisdiction.

11. On or about May 17, 2022, the Plaintiff made contact with the Agency's EEO Counselor. (Exhibit 1).

12. On or about August 11, 2022, GSA notified the plaintiff of the conclusion of EEO counseling and of plaintiff's right to file a formal complaint. Exhibit 2.

13. On August 23, 2022, Plaintiff filed a formal complaint alleging discrimination based on race, gender, and retaliation. Exhibit 3.

14. More than 180 days have passed from the date of this complaint.

15. In October, 2023, the Plaintiff received an Agency Final Agency Decision dated October 12, 2023. Exhibit 4.

16. This lawsuit is being filed within 90 days of receiving the Final Agency Decision.

17. Therefore, all administrative exhaustion requirements have been met.

18. This court has proper jurisdiction and venue pursuant to 29 U.S.C. § 1391 (2012).

## FACTS

19. Plaintiff's race is African American, and her gender is female, both of which are apparent by basic observation.

20. Plaintiff was the Director of Research at the U.S. Election Assistance Commission from November 18, 2018, until July 2022.

21. During this time period, Plaintiff worked directly for former Executive Director ("ED") Brian Newby from November 2018 through October 2019, and then for former ED Mona Harrington through February 2022, while she reported to Interim ED Mark Robbins from February 2022 through July 2022.

22. From November 2018 until Plaintiff left in July 2022, she was paid less than her counterparts by former EDs Newby and Harrington and also Interim ED Robbins.

23. In either August or September of 2019, Plaintiff asked her former subordinate David Kuennen to provide her with insight into his skillset so she could better align his workload with his role, and he provided her with his SF50 and a writing sample and resume.

24. When Plaintiff reviewed Kuennen's SF50, she saw that she was being compensated, as Director of Research, at the same level as Mr. Kuennen was while serving as Senior Research Program Specialist.

25. Plaintiff became suspicious that she was being compensated less than the previous Director of Research and also her similarly situated counterparts.

26. As Mr. Newby was not selected for another term as ED for EAC in October 2019, Plaintiff waited to voice her concerns about what she characterized as a discriminatory practice until Ms. Harrington assumed the role of ED in June 2020.

27. During an onboarding call with former ED Newby, he informed Plaintiff that Specialist Kuennen had also applied for the position as Director of Research and so she should expect some hostility from Mr. Kuennen.

28. When Plaintiff learned that her starting salary was the same as Specialist Kuennen, she believed that she was being discriminated against based on her race and sex as Mr. Kuennen is a white male, and it became clear to her that the salary offered to her without negotiation was to placate Mr. Kuennen.

29. Plaintiff was not being compensated at a Director Level, nor at the same level as her counterparts.

30. Plaintiff was the only black female Director during the time she was with the agency.

31. Plaintiff declared that she informed former ED Harrington multiple times about her pay inequity, beginning on June 10, 2020, when Ms. Harrington was announced as the new permanent ED.

32. While at the agency, Plaintiff was led to believe that management was working on the issue of discrimination via pay inequity but she received neither feedback nor follow-up on her concern.

33. Former EDs Newby and Harrington and others were aware that the agency lacked a formal objective process to determine salaries and made no effort to rectify the situation so that subjectivity and pay discrimination were not reduced.

34. Plaintiff was told that the agency administratively determined salaries through pay bands, but she believed that within the wide bands used by the agency there was no defined or transparent process for determining employee compensation.

35. In June 2020, Plaintiff received an email from former Director Jackson, regarding the pay bands, that showed the agency did not have a structured schedule for pay increases, which did not change as of July 2022, when she left the agency.

36. In either August or September 2019, Plaintiff received an unfounded pay increase, and this action was close to the hiring of a Director for Testing and Certification.

37. Plaintiff was told by staff close to Human Resources that she was receiving a raise so the agency could get in front of a discrimination claim for equal pay, and she believed these employees as after looking at Specialist Kuennen's SF 50, it was confirmed she was not being paid equitably to her counterparts.

38. Around September 2020 and 2021, then-ED Harrington issued bonuses to employees, and staff close to Finance and HR informed Plaintiff she received less than similarly situated counterparts.

39. In September 2021, Plaintiff asked former ED Harrington about the formula used to determine these amounts and she was told that the agency had a nomination form, which she noted had not been presented to her to develop award amounts for her staff.

40. Though based on the 'extraordinary challenges of the pandemic,' per former ED Harrington, different amounts were awarded though all staff were subjected to the same challenges.

41. In September 2021 Plaintiff began researching publicly available databases for the EAC and learned that the former Director of Research was being paid $137,000 at the time he left, which was $41,000.00 more than when she was hired, and she was also being paid less than counterparts hired after her.

42. This information, along with the fact that per Specialist Kuennen's SF50 Plaintiff was being paid only $3.00 more than he, led Plaintiff to submit her first complaint to EAC's Office of the Inspector General, but she did not receive a response.

43. In October 2021, Plaintiff asked for a pay increase as the longest-serving Director in the agency and she was in her third year and had no non-COLA increase in more than two years.

44. Though Plaintiff followed up on her request in both November and December 2021, no decision was made, and she characterized this as not equitable treatment to other agency personnel, including her own staff.

45. Several staff members close to the Finance and Human Resources divisions had approached Plaintiff and they were distraught because of reviewing salaries, bonuses, and other forms of compensation and believed that there was a significant disparity between she and other staff at her level in the agency.

46. This prompted Plaintiff to submit the two complaints to the EAC Inspector General.

47. Plaintiff had originally been offered a starting salary of $97,690, and she presented a counteroffer of $118,000.00, but she was told the agency was not in a position to negotiate.

48. Plaintiff was also told that after 12 months, the agency would entertain a merit-based increase, but this never occurred.

49. In August 2019, Plaintiff learned from staff close to HR that counterparts with roles similar to her own were afforded the opportunity to negotiate their salaries before they were onboarded and also throughout the time they were with the agency.

50. Director of Testing and Certification Jerome Lovato was able to negotiate his salary and also permitted to work remotely while employed with EAC.

51. The Director of Grants, a Caucasian, was offered an external position and informed the ED regarding a counteroffer to keep her, and the agency negotiated with her.

52. When Plaintiff received an external offer and let Interim ED Robbins know that she would like to negotiate her salary, this was refused, she noted, while her performance was never evaluated while she was an EAC employee.

53. In September 2019, then-ED Newby called Plaintiff to tell her that she would receive not a bonus but a pay increase to $123,500.00, and he did not explain why.

54. Plaintiff was told by staff close to the Director of HR that the reason her salary was increased was because Mr. Lovato had been hired as the Director of Testing and Certification and the HR Director informed Mr. Newby that it would be discrimination if he received $123,500.00 and was allowed to work remotely full time in another state and her salary was not increased to be at least closer to his.

55. This was discrimination as after 9 months, Plaintiff received a pay increase of more than 20% with no performance review, but this was still not comparable to that of Director Lovato, who she described as a white Hispanic male working from home in a less-costly metropolitan area than Washington, D.C.

56. In October 2021, Plaintiff submitted a request for a pay increase because her compensation was not comparable to that of the person she had replaced though she had by then been at the agency for a longer period of time.

57. Plaintiff did not receive a response concerning this request.

58. In April 2022, Plaintiff learned that Interim ED Robbins was gathering pay increase requests from staff while neither Mr. Robbins nor his staff communicated with her about such an increase.

59. So Plaintiff again filed a complaint with the EAC Inspector General.

60. Based on the reply Plaintiff received, she inquired on April 13, 2022, of the new HR Director, Tennille Dixon, how to initiate an EEO complaint.

61. Plaintiff thought the new Director, Dixon, was going to investigate her concern as an EEO complaint, while after more than a month, Administrative Officer Robin Sargent indicated to her in an email that Director Dixon had misinformed her.

62. Soon after Plaintiff joined the agency, she asked Specialist Kuennen how his wife and new child were doing, and his response was, "Great because they are born white and middle class in America, what else could they ask for?"

63. At some point during the spring of 2019, Natalie Longwell and Brenda Soder, who Plaintiff described as former staff members in the EAC Communications Department, approached her and were distraught about racist comments that Specialist Kuennen had made about her, so she attempted to document this hostility from Mr. Kuennen and proceed with an official reprimand through then-HR Director Jackson, but this was not successful as there was no formal process in place.

## Count I
## Discrimination Based on Race

64. Plaintiff Williams incorporates by reference all preceding paragraphs herein.

65. The aforementioned adverse actions against the Plaintiff were motivated by the Plaintiff's race as described by plaintiff, multiple of plaintiff's coworkers, and by examining comparators.

66. In terms of comparators, similarly situated co-workers outside of the Plaintiff's race were not treated in the manner in which Plaintiff was as described above.

67. David Kuennen, Jerome Lovato and the Director of Grants, name unknown at present, each received preferential treatment and were not African American.

68. In addition, Brenda Soder, Director of Communications, and Natalie Longwell, Ms. Soder's subordinate, both Caucasians, complained about the racism against African-Americans they witnessed.

69. The aforementioned adverse actions taken against the Plaintiff caused the Plaintiff tangible harm.

70. The Agency engaged in race-based discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and 29 U.S.C. § 633a.

71. Because of the Agency's actions, the Plaintiff suffered lost income, benefits, and the opportunity for future promotions and employment, as well as mental and emotional distress.

## Count II
## Title VII Discrimination Based on Gender

72. Plaintiff Williams incorporates by reference all preceding paragraphs herein.

73. The aforementioned adverse actions against the Plaintiff were motivated by the Plaintiff's gender as described by plaintiff, multiple of plaintiff's coworkers, and by examining

comparators. More specifically, plaintiff's supervisor did not support the advancement of the specific demographic of African American women.

74. In terms of comparators, similarly situated co-workers outside of the Plaintiff's gender-race combination were not treated in the manner in which Plaintiff was as described above.

75. David Kuennen and Jerome Lovato each received preferential treatment and were not women.

76. The aforementioned adverse actions taken against the Plaintiff caused the Plaintiff tangible harm.

77. The Agency engaged in gender-based discrimination in violation of Title VII 42 U.S.C. § 2000e *et seq.* and 29 U.S.C. § 633a.

78. Because of the Agency's actions, the Plaintiff suffered lost income, benefits, and the opportunity for future promotions and employment, as well as mental and emotional distress.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

    a. A declaratory judgment that the conduct of the Agency challenged herein was illegal and in violation of the aforementioned laws;

    b. Economic damages in an amount to be proved at trial, including compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described herein;

c. Compensatory damages in an amount to be proved at trial, including compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described herein;

d. Reasonable attorneys' fees, expenses, and costs incurred by Plaintiff;

e. Such other and further relief as the Court may deem just.

Respectfully Submitted,

/S/ Morris E. Fischer
Morris E. Fischer, Esq.
Morris E. Fischer, LLC
DC Bar No. 490369
11510 Georgia Ave, Suite 235
Silver Spring, MD 20902
301-328-7631 Office
301-328-7638 Fax
Attorney for Plaintiff

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury on all matters properly tried to a jury.

/S/ Morris E. Fischer
Morris E. Fischer, Esq.
Morris E. Fischer, LLC
DC Bar No. 490369
11510 Georgia Ave, Suite 235
Silver Spring, MD 20902
301-328-7631 Office
301-328-7638 Fax
Attorney for Plaintiff